**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ACORN SEMI, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:19-CV-00347-JRG |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD., | § | |
| SAMSUNG ELECTRONICS AMERICA, | § | |
| INC.,  SAMSUNG SEMICONDUCTOR, | § | |
| INC.,  SAMSUNG AUSTIN | § | |
| SEMICONDUCTOR, LLC, | § | |
| | § | |
| *Defendants*. | § | |

## <u>ORDER ON PRETRIAL MOTIONS AND MOTIONS *IN LIMINE*</u>

The Court held a Pretrial Conference in the above-captioned matter on Tuesday, April 27, 2021 regarding pending pretrial motions and motions *in limine* ("MILs") filed by Plaintiff Acorn Semi, LLC ("Plaintiff" or "Acorn") and Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor, LLC (collectively, "Defendants" or "Samsung") (together with Acorn, the "parties"). (Dkt. Nos. 145, 146, 147, 148, 152, 153, 156, 231, 232, 256, 296, 300, 307). This Order memorializes the Court's rulings on the aforementioned pretrial motions and MILs as announced from the bench into the record, including additional instructions that were given to the Parties. While this Order summarizes the Court's rulings as announced into the record during the pretrial hearing, this Order in no way limits or constrains such rulings from the bench. Accordingly, it is hereby **ORDERED** as follows:

<u>**PRETRIAL MOTIONS**</u>

1.    **Acorn's Motion to Strike and Exclude Portions of Rebuttal Expert Report of Dr. Jeffrey Bokor (Dkt. No. 147).**

The motion was **DENIED**. (Transcript at 33:10).[1]

The Court was persuaded that the opinions presented by Dr. Bokor that Acorn criticized do not rise to the level of absolute exclusion under *Daubert* and the Federal Rules of Evidence. The opinions in question can be fairly addressed through vigorous cross-examination.

2.    **Acorn's Motion to Strike and Exclude Portions of Opening Expert Report of Dr. Jeffrey Bokor (Dkt. Nos. 148).**

The motion was **GRANTED-IN-PART** and **DENIED-IN-PART**. (Transcript at 51:24–52:13).

The Court **GRANTED** the motion as to evidence and testimony on non-infringing alternatives. The evidence showed that Mr. Moreau, Samsung's Rule 30(b)(6) witness, was either not prepared or refused to testify to Topic 36, the topic on non-infringing alternatives on which he was clearly designated. However, Dr. Bokor had the benefit of and relied on conversations with Mr. Moreau to develop his opinions on non-infringing alternatives. As Mr. Moreau did not testify on that topic when questioned, Acorn was unable to test the veracity of the sources underlying Dr. Bokor's opinions on non-infringing alternatives.

The Court may issue appropriate sanctions on motion if a party's Rule 30(b)(6) witness fails to appear for a deposition. Fed. R. Civ. P. 37(d)(1)(A)(i). Among the sanctions available is "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii); *see also* Fed. R. Civ. P. (d)(3). "If [a corporate representative] is not knowledgeable about relevant facts, and the

---

[1] Unless otherwise indicated, references to "Transcript" herein are to the rough transcript of the pretrial conference. The Court expects a final transcript to be filed on the docket shortly.

principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all." *Resolution Tr. Corp. v. So. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993).

With regard to Topic 36, Samsung has essentially failed to designate a knowledgeable witness. It is not possible to determine from Dr. Bokor's report the extent to which Dr. Bokor relied on Mr. Moreau versus other sources. Accordingly, the Court was of the opinion that striking the issue of non-infringing alternatives—and precluding Dr. Bokor from testifying on non-infringing alternatives—was an appropriate sanction for Mr. Moreau's failure to testify. Mr. Moreau was a Rule 30(b)(6) witness employed by Samsung. Accordingly, the Court **STRUCK** any opinions on non-infringing alternatives from Dr. Bokor's report, and will exclude any testimony on the same from Dr. Bokor or other Samsung witnesses.

The Court **DENIED** the motion in all other respects, including Dr. Bokor's opinions on enablement. The Court was persuaded that Dr. Bokor's opinions were not so unreliable as to warrant exclusion. Acorn's motion presents the Court with a classical battle of the experts, and the best vehicle for Acorn to challenge Dr. Bokor's opinion is through cross-examination and the presentation of competing evidence.

**3.     Acorn's Motion to Strike and Exclude Testimony by Dr. Jeffrey Bokor Relating to Active Doping Levels in Samsung Accused Products (Dkt. Nos. 300).**

The motion was **GRANTED-IN-PART** and **DENIED-IN-PART**. (Transcript at 56:9–58:17).

The Court **GRANTED** the motion as to any opinions by Dr. Bokor that the level of active dopant in the accused Samsung products was $1 \cdot 10^{20} / \mathrm{cm}^3$ (*i.e.*, "1 E 20") because the parties agreed that Dr. Bokor did not offer this opinion in any of his reports. The Court noted that cross-

examination by Acorn does not open the door for Dr. Bokor to provide new opinions not disclosed in his report.

The Court **DENIED** the motion in all other respects. The Court cannot pre-judge at the pre-trial conference whether Dr. Bokor's trial testimony will or will not be within the scope of his report. To the extent that either party believes that any expert witness is testifying beyond the scope of his or her report, that party should object in real time.

**4.      Acorn's Motion to Take Deposition from Dr. Jeffrey Bokor and EAG or, in the Alternative, to Strike and Exclude Certain Expert Testimony by Dr. Jeffrey Bokor (Dkt. Nos. 307).**

The motion was **GRANTED-IN-PART** and **DENIED-IN-PART**. (April 28, 2021 Transcript, Dkt. No. 328 at 74:22–75:5).

The Court previously granted the parties leave to serve supplemental reports from Dr. Piner and Dr. Bokor to address late-produced discovery. (Dkt. No. 288). The Court also granted leave for the parties to take targeted depositions of both experts on their supplemental reports. (*Id.*). During Dr. Bokor's deposition, it came to light that Dr. Bokor had had additional conversations with the lab he retained for testing, Evans Analytics Group ("EAG"), after service of his original report. Dr. Bokor relied on EAG data in his original report. After this came to light, Acorn moved for leave to depose Dr. Bokor and an EAG representative on the substance of this conversation.

Due to the timing of this motion, the pretrial conference, and the jury selection date, the Court had directed the parties to conduct one-hour depositions of Dr. Bokor and EAG prior to the pretrial conference. This was done to avoid having additional discovery taken after jury selection. The Court informed the parties that it would hear argument at the pretrial conference as to whether leave would be granted to use that testimony at trial.

After hearing the arguments of the parties and reviewing the transcripts of Dr. Bokor's and EAG's depositions, the Court **GRANTED** the motion as to Dr. Bokor and **DENIED** the motion

4

as to EAG. Accordingly, the parties have leave to use Dr. Bokor's deposition at trial and do not have leave to use the EAG representative's deposition at trial.

**5.      Samsung's Motion to Exclude Expert Testimony of Dr. Edwin Piner (Dkt. No. 145)**

The motion was **DENIED.** (Transcript at 83:2–11).

The Court was persuaded that none of the alleged infirmities in Dr. Piner's report rose to the level of requiring absolute exclusion, and Samsung's motion presented the Court with a battle of the experts. The most appropriate vehicle to challenge Dr. Piner's theories is through vigorous cross-examination and the presentation of competing evidence.

**6.      Samsung's Motion to Exclude Expert Testimony of Dr. Kelin Kuhn and Strike Portions of Dr. Kuhn's Expert Report (Dkt. No. 156)**

The motion was **DENIED.** (Transcript at 93:18–94:5).

The Court was persuaded that Dr. Kuhn's opinions did not warrant exclusion, and that Samsung can fairly confront them through cross-examination and the presentation of competing evidence.

As to the opinions of Dr. Kuhn that Samsung contends are infringement opinions, the Court is persuaded that Samsung opened the door to such opinions in Dr. Bokor's invalidity report. However, the Court admonished the parties that Dr. Kuhn's opinions arenot to be used, offered, or argued before the jury for any purpose related to infringement, and that she is limited to opining as an expert on invalidity only.

**7.      Samsung's Motion for Partial Summary Judgment of No Willful Infringement (Dkt. No. 156)**

The motion was **DENIED**. (Transcript at 110:22–111:9).

Acorn informed the Court it was no longer asking for a stay of summary judgment under Fed. R. Civ. P. 56(d).

As to the merits of the motion, the Court was persuaded that the issue of willfulness—including pre-suit knowledge, post-suit egregious conduct, and willful blindness—was replete with factual questions for a jury to resolve. Willfulness is a matter of culpability and is determined by considering the totality of the circumstances. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016); *Gustafson, Inc. v. Intersystem Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990). When viewed in a light most favorable to the non-movant—here, Acorn—the facts in the record would permit a reasonable jury to find for Acorn on the issue of willfulness. Accordingly, Samsung was not entitled to judgment as a matter of law.

**8.     Acorn's Motion to Strike and Exclude Portions of the Expert Report of Paul Meyer (Dkt. No. 152)**

The motion was **GRANTED-IN-PART** and **DENIED-IN-PART**. (Transcript at 130:9–21).

The Court **GRANTED** the motion as to non-infringing alternatives, consistent with the Court's ruling on the same issue as it relates to Dr. Bokor.

The Court **DENIED** the motion as to Mr. Meyer's opinions comparable licenses. As to the KST and University of Illinois licenses, the Court was persuaded that Acorn's criticisms went more to the weight of Mr. Meyer's opinions rather than their admissibility. Accordingly, the Court concluded that these issues are appropriate for resolution before the trier of fact.

As to the KAIST license, both parties confirmed that Mr. Meyer and Mr. Dell each now provide comparability opinions on the same, rendering that portion of the motion moot.

**9. Samsung's Motion to Exclude Mr. Dell's Opinions Under Fed. Rule Evid. 702 and *Daubert* (Dkt. No. 153)**

The motion was **DENIED.** (Transcript at 145:19–146:12).

The Court was persuaded that Samsung's criticisms of Mr. Dell's opinions—as to apportionment, comparability, and use of the IBM licensing practices, the Acorn/Sequans license, and the STC.UNM license—go more to weight rather than admissibility.

As to the STC.UNM license, the Court instructed Acorn that its use in Mr. Dell's hypothetical negotiation analysis is limited to an indicator that Samsung would pay towards the upper end of a royalty range established by other comparable licenses. The STC.UNM license is not itself to be used to establish such a range.

**10. Samsung's Motion to Exclude Mr. Dell's Opinions in His Supplemental Report Under Fed. R. Evid. 702 and *Daubert* (Dkt. No. 296)**

The motion was **DENIED.** (Transcript at 169:7–170:16).

The Court will permit each party to make use of the settlement license between Samsung and KAIST. The Court will limit the parties and their experts to providing the following context:

- Samsung and KAIST were previously involved in litigation (the time and place not to be specified).

- Out of that litigation, Samsung became obligated to pay KAIST some amount of money in excess of the ultimate amount of the settlement.

- The ultimate collectability and enforceability of that larger amount was in question because of possible appeals and subsequent review.

- To settle that uncertainty, KAIST and Samsung agreed to enter into a license for an ultimate amount less than the obligation originally incurred.

The license may be discussed within its four corners. Each expert can provide his or her own opinion on the effect of this context on the hypothetical negotiation. The parties and their experts are not to mention that Samsung was adjudicated to be an infringer and the patent was adjudicated

to be valid. The parties are also not to mention the vacated jury verdict, the willfulness enhancement, the Court's application of remittitur, or the pending *ex parte* reexamination at the PTAB at the time of settlement. These matters should also be redacted from the KAIST license to the extent they are discussed within the four corners of the document.

<u>**MOTIONS *IN LIMINE***</u>

It is **ORDERED** that the Parties, their witnesses, and counsel shall not raise, discuss, or argue the following before the venire panel or the jury without prior leave of the Court:

**I.     AGREED MOTIONS *IN LIMINE* (Dkt. No. 231)**

The following MILs were **GRANTED-AS-AGREED** (Transcript at 173:6 –9):

<u>Agreed MIL 1</u>     **References to any pretrial rulings (or lack of ruling) by the Court on Daubert or summary judgment motions.**

<u>Agreed MIL 2</u>     **References to the geographic origin of counsel, the size of the parties' law firms, or the number of attorneys representing the parties.**

<u>Agreed MIL 3</u>     **References, evidence, testimony (including expert testimony), arguments, or inquiries attempting to elicit testimony, regarding whether any testimony or opinions of either party's experts have been excluded or found unreliable in this lawsuit**

<u>Agreed MIL 4</u>     **Preclude any comment, argument, testimony, or evidence stating, suggesting, or implying that the conduct of the other party is responsible or the cause for (1) the timing of the trial as it relates to the specific date of the trial, (2) jurors having to come to the courthouse and/or serve on the jury during the pandemic, (3) any risk to health or safety of the jurors, their families, members of the community, or anyone else, or (4) any burden or inconvenience to the jurors as it relates to the pandemic or the specific date of the trial.**

<u>Agreed MIL 5</u>     **Preclude evidence or argument regarding choice to testify in native language.**

<u>Agreed MIL 6</u>     **That Defendants cannot infringe simply because they have their own patents or because the accused products practice other patents.**

<u>Agreed MIL 7</u>     **Advice of counsel defense.**

<u>Agreed MIL 8</u>     **Fee arrangements with counsel or with litigation funding entities.**

<u>Agreed MIL 9</u>     **Any attempt to disparage the USPTO.**

<u>Agreed MIL 10</u>     **Reference to Acorn Semi, LLC or Acorn Technologies, Inc. as a "patent troll," "troll," "NPE" or "non-practicing entity" or similarly disparaging labels or characterizations.**

Agreed MIL 11         No **testimony from Sungsam Lee or Bo Yun Tu.**

Agreed MIL 12         **Derogatory, pejorative or prejudicial statements about (a) Samsung being a foreign or Korean company; (b) any suggestion that COVID originated from an Asian country; or (c) any suggestion that Samsung sets transfer pricing to defraud any tax authority.**

## II.     PLAINTIFF'S MOTIONS *IN LIMINE* (Dkt. No. 256)

Plaintiff's MIL 1     **Assertions that no other manufacturer has made or is making products according to the patents.**

The MIL was **GRANTED**. (Transcript at 174:8–15).

The Court noted that the absence of licensing is not probative of any of the *Georgia-Pacific*

factors. If Acorn opens the door to such evidence, Samsung may seek leave to address it.

Plaintiff's MIL 2     **Assertions that Acorn has not asserted claims for infringement of the patents against any other manufacturers.**

The MIL was **GRANTED**. (Transcript at 174:16–23).

The absence of assertion is not probative of any of any issue. If Acorn opens the door to

such evidence, or under similar extenuating circumstances, Samsung may seek leave to address it.

Plaintiff's MIL 3     **Comparing the accused products to preferred embodiments of the patents.**

The MIL was **GRANTED**. (Transcript at 174:24–175:2).

The Court noted that such comparisons are clearly improper.

Plaintiff's MIL 4    **Lay testimony regarding invalidity or noninfringement.**

The MIL was **DENIED**. (Transcript at 175:3–12).

The Court noted that this MIL was duplicative of Fed. R. Evid. 702. The Court will not permit a lay witness to offer opinion testimony opinion testimony on any issue. However, the Court declined to issue an order *in limine* that is redundant of the rule already in place.

Plaintiff's MIL 5    **Characterization of the reasons why the '423 and/or '261 Patents are no longer being asserted in this lawsuit, including characterizations that these patents have been "dropped," "abandoned," "found invalid," etc.**

The MIL was **GRANTED**. (Transcript at 177:7–22).

The Court noted that Mr. Dell is permitted to testify that his opined royalty rate would not change if there were a different number of patents, and Samsung is permitted to address this opinion on cross-examination. However, the parties and their experts are not to refer to patents that are no longer at issue in the case so as to show such were at issue in this case at an earlier time

Plaintiff's MIL 6    **Dollar values from Samsung-produced license agreements for which no opinion has been offered that the underlying technology is technically comparable.**

The MIL was **GRANTED-AS-AGREED**. (Transcript at 178:8–16).

The parties agreed that Samsung will not identify the specific amount of the royalty for Agreement Nos. 4 through 16 and 19 on Attachment 8 in Mr. Meyer's rebuttal report, but may refer to the form of the royalty as a lump sum royalty.

Plaintiff's MIL 7    **Prior art references listed in Samsung's invalidity contentions or which have been raised by Samsung in prior-art based invalidity arguments, either in this lawsuit or in IPR proceedings involving the patents.**

The MIL was **GRANTED**. (Transcript at 178:25–179:9).

The Court noted that prior art is relevant for background purposes and discussions of the state of the art under the *In re Wands* analysis for enablement and the *Georgia-Pacific* factors for damages. However, the Court expressly precluded any direct comparison between the prior art and the asserted claims.

Plaintiff's MIL 8    **Invalidity arguments other than non-enablement of the Low SCR Claims.**

The MIL was **GRANTED**. (Transcript at 179:24–180:3).

The Court noted, however, that prior art is relevant for background purposes and discussions of the state of the art under the *Wands* and *Georgia-Pacific* factors.

Plaintiff's MIL 9    **Testimony or evidence relating to purported non-infringing alternatives.**

The MIL was **GRANTED**. (Transcript at 180:8–15).

The Court granted the MIL consistent with its ruling on non-infringing alternatives with respect to Dr. Bokor. The Court noted Samsung's objection.

Plaintiff's MIL 10      **Testimony from David Moreau relating to any purported non-infringing alternative.**

The MIL was **GRANTED**. (Transcript at 180:16–22).

The Court granted the MIL consistent with its ruling on non-infringing alternatives with respect to Dr. Bokor. The Court noted Samsung's objection.

Plaintiff's MIL 11      **Testimony or evidence relating to any purported non-infringing alternative that is not described in Dr. Bokor's opening expert report.**

The MIL was **GRANTED**. (Transcript at 184:22–24).

The Court granted the MIL consistent with its ruling on non-infringing alternatives with respect to Dr. Bokor. The Court noted Samsung's objection. The Court further noted that no expert should testify outside the scope of his or her report on any issue. If any expert does, the parties should object in real time under Fed. R. Evid. 702.

Plaintiff's MIL 12      **Testimony or evidence suggesting that the accused interface layer of the accused products is the same as a titanium silicide interface layer of prior devices manufactured by Samsung or others, or that the amount of oxygen found at the interface in the accused products is similar to that found at the interface in prior devices manufactured by Samsung or others.**

The MIL was **DENIED**. (Transcript at 186:12–15).

The Court noted that attempts to re-litigate *Daubert* motions are not proper motions *in limine*.

<u>Plaintiff's MIL 13</u>     **The Peter Norton Living Trust or its security interest in the patents.**

The MIL was **GRANTED**. (Transcript at 202:16–23).

This MIL was granted consistent with the Court's ruling on Defendants' MIL No. 5.

<u>Plaintiff's MIL 14</u>     *Inter Partes* **Review proceedings or disclaimers involving any of the patents.**

The MIL was **GRANTED-IN-PART** and **DENIED-IN-PART**. (Transcript at 188:9–15).

The Court **GRANTED** the MIL as to direct references to the "Patent Trial and Appeal Board" and "*inter partes* review" but **DENIED** the MIL as to the substantive effect of documents and filings from such proceedings.

To the extent that a statement attributable to Acorn before the PTAB constitutes a prior inconsistent statement, Samsung is not precluded from using it through ordinary impeachment. However, any such statements shall be presented generically as statements made to the "Patent Office" without reference to the PTAB or IPRs. Any direct references to the PTAB or to IPRs shall be appropriately redacted from exhibits and demonstratives.

<u>Plaintiff's MIL 15</u>     **Acorn's attempted IPO in 2007/2008 or related valuations.**

The MIL was **GRANTED**. (Transcript at 188:16–22).

The Court noted that Acorn's attempted initial public offering is not relevant to any issue in the case. Samsung may seek leave if it believes Acorn has opened the door to such evidence.

Plaintiff's MIL 16     **Assertions regarding the relative importance of MIGS suppression, surface passivation, and interface dipoles in depinning the Fermi level or influencing Schottky Barrier Heights.**

The MIL was **DENIED**. (Transcript at 188:23–189:1).

The Court noted that attempts to re-litigate *Daubert* motions are not proper motions *in limine*.

Plaintiff's MIL 17     **Testimony that removing oxide at the source/drain contact region of an accused device would necessarily lead to better performance or lower contact resistance.**

The MIL was **DENIED**. (Transcript at 189:2–3).

The Court noted that attempts to re-litigate *Daubert* motions are not proper motions *in limine*.

Plaintiff's MIL 18     **Testimony from any Samsung witness falling outside the scope of what has been disclosed in the initial disclosures or 30(b)(6) designations for that witness.**

The MIL was **DENIED**. (Transcript at 189:13–20).

The Court noted that Rule 30(b)(6) witnesses will not be permitted to testify beyond the scope of the topics on which they were disclosed or designated or beyond their personal knowledge. To the extent any Rule 30(b)(6) witness does, the Court will hear objections in real time under the Federal Rules of Civil Procedure and the Federal Rules of Evidence. However, the Court declined to issue an order *in limine* that duplicates the usual rules of Court.

<u>Plaintiff's MIL 19</u>     **Comparison of germanium and oxygen EELS or EDS data for the accused products.**

The MIL was **DENIED**. (Transcript at 189:21–24).

The Court noted that attempts to re-litigate *Daubert* motions are not proper motions *in limine*.

<u>Plaintiff's MIL 20</u>     **That the specification must enable devices practicing the Low SCR Claims that have no nitride, hydride, or fluoride in the interface layer.**

The MIL was **DENIED**. (Transcript at 189:25–190:7).

The Court noted that attempts to re-litigate *Daubert* motions are not proper motions *in limine*.

<u>Plaintiff's MIL 21</u>     **That the specification must enable the accused products or alleged characteristics of the accused products.**

The MIL was **GRANTED**. (Transcript at 190:8–21).

The Court noted its concern about improper comparisons between the specification and the accused product, and therefore elected to exercise its gatekeeping role to protect against such comparisons. However, this MIL is not intended to hinder Samsung's lack-of-enablement defense. Therefore, if the Court is persuaded there is a good reason to go into a specific matter that may be covered by this MIL, the Court may grant leave when sought.

<u>Plaintiff's MIL 22</u>       **The alleged workload of the USPTO**

The MIL was **GRANTED**. (Transcript at 190:22–191:13).

The Court noted its concern about improper characterizations of the PTO as overworked or sloppy, and therefore elected to exercise its gatekeeping role to protect against such characterizations. However, this MIL does not preclude Samsung from arguing at a high level that PTO examiners are human beings who are not infallible and are subject to making mistakes.

**III.  DEFENDANT'S MOTIONS *IN LIMINE* (Dkt. No. 232)**

Defendants' MIL 1    **No expert testimony or opinions not disclosed in expert reports.**

The MIL was **DENIED**. (Transcript at 195:4–7).

The Court denied this MIL as duplicative of the established rule of Court that experts shall not testify beyond the four corners of their reports.

Defendants' MIL 2    **No argument, evidence, testimony, insinuation, reference, or assertion relating to any litigations, rulings, or accusations against Defendants in unrelated legal proceedings or unrelated disputed matters between a Defendant and any third party.**

The MIL was **GRANTED** as clarified on the record. (Transcript at 196:2–3).

The Court granted this MIL with the exception of providing context for litigation licenses used in the hypothetical negotiation analysis. With respect to the KAIST/Samsung license, the parties are expected to follow the specific guidance articulated by the Court on the record. (*See supra* p. 7–8; Transcript at 169:7–170:16).

Defendants' MIL 3    **No evidence, argument, or suggestion relating to pre-trial discovery disputes between the parties or documents allegedly not produced during discovery.**

The MIL was **GRANTED**. (Transcript at 196:4–7).

The Court noted that pre-trial discovery disputes and obligations are irrelevant to any issue at trial, including willfulness, and risks substantial prejudice.

<u>Defendants' MIL 4</u>   **No references to or argument regarding any pretrial rulings (or lack of ruling) by the Court other than the Court's claim constructions.**

The MIL was **GRANTED**. (Transcript at 196:8–20).

The Court noted that any discussion of pre-trial rulings is irrelevant. Discussions of the Court's claim construction order is limited to the language of the Court's adopted constructions. There shall be no discussion of the reasoning in the Court's claim construction order, as set forth in the order itself. (Dkt. No. 85 at 39–40).

<u>Defendants' MIL 5</u>   **No references to Acorn's Board of Directors, Advisory Board or investors, or to individuals who play such a role, including reference to their alleged knowledge and expertise.**

The MIL was **GRANTED**. (Transcript at 196:21–197:11).

The Court saw no probative basis for discussion of how sophisticated Acorn's board members are. The Court was persuaded that any possible probative value would be substantially outweighed by the prejudicial effect. The parties are not to discuss Mr. Norton or any other board distinguished members. If Acorn believes the door has been opened, it must seek leave in advance.

<u>Defendants' MIL 6</u>   **No evidence or arguments regarding any license, agreement or policy as to which no technical and economic comparability analyses were performed.**

The MIL was **DENIED**. (Transcript at 197:12–13).

The Court noted that attempts to re-litigate *Daubert* motions are not proper motions *in limine*.

<u>Defendants' MIL 7</u>    **No evidence or argument regarding the ASM/Atomera license, Chartered Semiconductor/Motorola agreements, the IBM/IBIS agreement, or the IBIS/Mitsubishi agreements.**

The MIL was **DENIED**. (Transcript at 197:14–15).

The Court noted that attempts to re-litigate *Daubert* motions are not proper motions *in limine*.

<u>Defendants' MIL 8</u>    **No evidence or argument concerning Defendants' overall size, wealth, total revenues, or total revenues or profits from sales of downstream end-user products, including products not accused in this case.**

The MIL was **GRANTED-IN-PART** and **DENIED-IN-PART**. (Transcript at 197:16–26).

The Court granted this MIL as to overall size and wealth and total revenues of Samsung or any of the Samsung Defendants, which the Court considers irrelevant and prejudicial. The Court denied this MIL as to convoyed sales, which the Court considers relevant to the *Georgia-Pacific* analysis.

<u>Defendants' MIL 9</u>    **No testimony, argument or suggestion contending that Samsung sets transfer pricing to reduce tax liability.**

The MIL was **GRANTED**. (Transcript at 198:10–15).

The Court noted that Acorn is not precluded from arguing that the actual transfer pricing of the accused product between sister companies may be less than the price of a market-based transaction between unrelated companies at arms' length. However, Acorn may not argue or imply that Samsung sets its transfer pricing to reduce or avoid tax liability.

Defendants' MIL 10 **No evidence of or argument regarding any Samsung patents or publications that refer to (1) articles written by the named inventors or (2) Acorn patents not asserted at this trial.**

The MIL was **DENIED**. (Transcript at 198:16–18).

The Court noted that attempts to re-litigate dispositive motions are not proper motions *in limine*.

Defendants' MIL 11 **No evidence or argument for the presumption of validity.**

The MIL was **DENIED**. (Transcript at 198:19–24).

The Court noted that the presumption of validity is established by law. However, the Court—and only the Court—will instruct the jury on the law and the parties are not precluded from offering legal instructions or arguments before the jury.

Defendants' MIL 12 **No improper argument regarding the burden of proof.**

The MIL was **GRANTED**. (Transcript at 198:25–199:17).

Neither party shall amplify, contradict, redefine, or otherwise expound on the Court's instructions on the burden of proof. The parties are bound by the Court's instructions on the proper burdens of proof. The parties are expected not to make any comparisons of the burdens of proof to other areas of law, including family law and criminal law.

<u>Defendants' MIL 13</u> **No referencing or criticizing the identity, presence, or absence of corporate representatives, or parties' employees or officers in the courtroom.**

The MIL was **GRANTED**. (Transcript at 198:18–200:10).

Neither party is permitted to make "empty chair" arguments.

The Court noted that this MIL is not intended to preclude the parties from identifying or making reference to those corporate representatives who are present and testifying as witnesses. However, the parties are not to identify employees or representatives who are present in the courtroom but not participating in the trial.

If either party believes that the circumstances have rendered any such argument proper, that party may seek leave of the Court outside of the jury's presence.

<u>Defendants' MIL 14</u> **No argument, evidence, or questions concerning whether the Court has power to dismiss frivolous claims, or suggesting by extension that a party's claims have weight because they have not been dismissed.**

The MIL was **GRANTED-AS-AGREED**. (Transcript at 200:18–19).

<u>Defendants' MIL 15</u> **No references to or argument regarding the expert report drafting process and communications between an expert and counsel.**

The MIL was **GRANTED**. (Transcript at 200:20–201:9).

The Court noted that once an expert witness has signed his or her report, he or she adopts the full scope of their report is bound by the same. Accordingly, there should be no testimony, evidence, or argument on the mechanics of the expert report drafting process, including any consultation with lawyers. The parties may seek leave to raise such issues upon a showing of truly exceptional circumstances, but may raise such before the jury only after the Court grants leave.

Defendants' MIL 16   **No references, evidence, testimony, arguments, or inquiries attempting to elicit testimony, regarding whether any testimony or opinions of either party's experts have been excluded or found unreliable in any other lawsuit.**

The MIL was **GRANTED-AS-AGREED**. (Transcript at 201:10–21).

The Court noted that the parties are permitted to inquire into how many times an expert has been retained by the party proffering them, as this is probative of potential bias. However, neither party shall argue or elicit that an expert's testimony or opinion has been struck or found unreliable.


Defendants' MIL 17   **No references to enhanced damages or a potential attorneys' fee award.**

The MIL was **GRANTED**. (Transcript at 202:4–10).

Neither party shall discuss potential awards of enhanced damages or attorneys' fees.

**ADDITIONAL MATTERS**

## I.     ACORN'S OBJECTION TO SAMSUNG'S 35 U.S.C. § 112 DEFENSE

The Court **DENIED** Acorn's request in the joint pretrial order (Dkt. No. 310) to preclude Samsung from pursuing an invalidity defense under 35 U.S.C. § 112. (Transcript at 23:24–25:3).

The Court noted that Acorn's request for relief—which cites no legal authority—was not properly before the Court in the form of a substantive motion. Acorn could have moved for leave to file a motion for summary judgment after the deadline—as it did for two late-breaking *Daubert* motions (Dkt. Nos. 300, 307) (and which the Court granted leave to file (Dkt. Nos. 311, 312))— but Acorn did not do so. The joint pretrial order is not a proper vehicle to seek preclusion of an opposing party's defense.

Additionally, while the Court did not have the benefit of any briefing on this issue, the Court is hesitant to conclude that Samsung's stipulation before the PTAB would preclude it from pursuing an invalidity defense under § 112 in an Article III Court. Samsung stipulated not to pursue in this Court "any invalidity ground on that patent that was raised or that could have been reasonably raised in an IPR, *i.e.*, any ground that could be raised under §§ 102 or 103 on the basis of prior art patents or printed publications." (Dkt. No. 177-1). Plainly, an invalidity challenge under § 112 is not an "invalidity ground . . . that could have been reasonably raised in an IPR." *See* 35 U.S.C. § 311(b) ("A petitioner in an inter partes review may request to cancel as unpatentable or more claims of a patent *only on a ground that could be raised under section 102 or 103* and *only on the basis of prior art consisting of patents or printed publications*." (emphases added)). Even if the PTAB did answer preliminary questions on § 112 incident to its review of the asserted patents under § 103, the wording of Samsung's stipulation is clearly consonant with the statute describing

the scope of *inter partes* review. Accordingly, the Court will not preclude Samsung from presenting its a lack-of-enablement challenge under § 112 as a part of this trial.

**So ORDERED and SIGNED this 29th day of April, 2021.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE