IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ACORN SEMI, LLC, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION NO. 2:19-CV-00347-JRG |
| § | |
| SAMSUNG ELECTRONICS CO., LTD., § | |
| SAMSUNG ELECTRONICS AMERICA, § | **FILED UNDER SEAL** |
| INC., SAMSUNG SEMICONDUCTOR, § | |
| INC., SAMSUNG AUSTIN § | |
| SEMICONDUCTOR, LLC, § | |
| § | |
| *Defendants*. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Acorn Semi LLC's ("Acorn") Motion to Amend the Judgment with Respect to Pre-Judgment Interest (the "Motion to Amend") (Dkt. No. 386) and Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor, LLC's (collectively, "Samsung") Motion for Judgment as a Matter of Law of Noninfringement (the "JMOL Motion") (Dkt. No. 387) (together with the Motion to Amend, the "Motions"). Having considered the Motions and the subsequent briefing, and for the reasons set forth herein, the Motions are **DENIED**.

I.   **LEGAL STANDARD**

   A.   **Altering or Amending the Judgment under Fed. R. Civ. P. 59(e)**

Under Rule 59(e), a party can move the Court to amend an order or judgment within 28 days of entry. Fed. R. Civ. P. 59(e). "Rule 59(e) is properly invoked 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002) (internal citations omitted). A motion to amend an order or judgment "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been

offered or raised before." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).  Given that "specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion in granting or denying the motion." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (internal citations omitted).  Accordingly, relief under Rule 59(e) is appropriate only when (1) there is a manifest error of law or fact; (2) there is newly discovered or previously unavailable evidence; (3) there would otherwise be manifest injustice; or (4) there is an intervening change in controlling law.  *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

B.   **Judgment as a Matter of Law ("JMOL")**

"Judgment as a matter of law is proper when 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) (quoting Fed. R. Civ. P. 50(a)).  The non-moving party must identify "substantial evidence" to support its positions.  *TGIP, Inc. v. AT&T Corp.*, 527 F. Supp. 2d 561, 569 (E.D. Tex. 2007).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1363 (Fed. Cir. 2004).

"The Fifth Circuit views all evidence in a light most favorable to the verdict and will reverse a jury's verdict only if the evidence points so overwhelmingly in favor of one party that reasonable jurors could not arrive at any contrary conclusion." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018) (citing *Bagby Elevator Co. v. Schindler Elevator Corp.*, 609 F.3d 768, 773 (5th Cir. 2010)).  A court must "resolve all conflicting evidence in favor of [the verdict] and refrain from weighing the evidence or making credibility determinations." *Gomez v. St. Jude Med. Daig. Div. Inc.*, 442 F.3d 919, 937–38 (5th Cir. 2006).

## II. DISCUSSION

### A. Acorn's Motion to Amend

Acorn's Motion to Amend asks the Court to amend the pre-judgment interest rate set forth in the Final Judgment (Dkt. No. 379). (Dkt. No. 386 at 1). Specifically, Acorn asks the Court to increase the pre-judgment interest rate from the 5-year U.S. Treasury Bill rate to Acorn's true cost of borrowing money over the relevant period, which has been at 3.25% per annum non-compounding. (*Id.*). For the reasons set forth below, the Court declines to modify the Final Judgment.

Acorn argues that 35 U.S.C. § 284 requires that "upon a finding of infringement, 'the court ***shall*** award the claimant damages adequate to compensate for the infringement . . . together with interest and costs as fixed by the court.'" (Dkt. No. 386 at 2) (quoting 35 U.S.C. § 284) (emphasis added by Acorn). Acorn argues that although "the interest rate and whether it should be compounded are matters left largely to the discretion of the district court," "the district court should be guided by the purpose of pre-judgment interest . . . which is 'to place the patentee in as good a position as he would have been had the infringer paid a reasonable royalty instead of infringing.'" (*Id.* at 2) (quoting *DDR Holdings, LLC v. Hotels.com, L.P.*, Case No. 2:06-cv-042, 2013 WL 3187163, at *1 (E.D. Tex. Jun. 20, 2013)). Acorn argues that it "has not until now had occasion to present evidence relevant to" pre-judgment interest. (*Id.* at 3). Acorn recounts the following timeline:

- On May 19, 2021, the jury issued its verdict awarding Acorn a $25 million lump sum royalty for Samsung's infringement. (*Id.* at 4) (citing Dkt. No. 368).
- May 21, 2021, the Court *sua sponte* issued an order directing the parties to mediate and stated that "the Court will delay entry of judgment pursuant to the jury's verdict

- until a report of such mediation is communicated to the Court by the mediator." (*Id.*) (quoting Dkt. No. 373).

- The parties mediated before Hon. David Folsom on July 1, 2021. (*Id.*)

- Final Judgment was entered on July 13, 2021. (Dkt. No. 379).

- The Mediation Report was submitted on the docket on July 16, 2021, indicating the parties were at an impasse. (Dkt. No. 381).

Acorn argues that given this timeline, "Acorn has not had a clear opportunity to brief the question of pre-judgment interest or to otherwise present relevant evidence of its borrowing history and costs." (Dkt. No. 386 at 4). Acorn argues that it has borrowed more than $20 million at an annual rate of 3.25% in order to fund its day-to-day operations. (*Id.* at 5). Acorn contends that in order to be made whole "Acorn should be fairly compensated for its true borrowing costs incurred because of Samsung's failure to pay a reasonable royalty in January 2015." (*Id.*). Acorn argues that a failure to recognize its "real-world costs of borrowing money would improperly penalize Acorn and provide a windfall to Samsung, the adjudged infringer." (*Id.*).

Samsung responds that Rule 59(e) motions are only proper when based on certain grounds, and Acorn's request does not meet any of those grounds. (Dkt. No. 393 at 3). In fact, Samsung argues, "Acorn presents 'an argument or legal theory which could have been offered or raised before the entry of judgment,' so the calculation 'cannot be raised [under Rule 59(e)] for the first time after a final judgment is entered.'" (*Id.*) (quoting *OPTi Inc. v. VIA Techs., Inc.*, No. 2:10-CV-00279, 2015 WL 417193, at *2 (E.D. Tex. Jan. 30, 2015)). Samsung acknowledges that Acorn generally requested pre-judgment interest in its Complaint and pretrial order. (*Id.* at 4, n.1) (citing Dkt. Nos. 1, 336). However, Samsung argues, Acorn did not, until now, raise any argument about the amount or rate of pre-judgment interest it wanted. (*Id.*). Samsung argues that Acorn's timeline

(recounted above) shows that "Acorn had ample opportunity to submit a proposed pre-judgment interest calculation" and that "[t]he judgment was entered **55 days after the verdict**." (*Id.* at 4). Samsung argues that fifty-five days was plenty of time for Acorn to submit its five-page Motion to Amend. (*Id.*).

The Court finds that Acorn is attempting to present an argument that could have and should have been raised before the Court entered the Final Judgment. The Court was clear that it would delay entry of a judgment until after mediation. (Dkt. No. 373 at 2). Acorn was therefore on notice on May 21, 2021 that the Court would issue a final judgment in the event mediation failed. Yet, although Acorn has sought pre-judgment interest since it filed this case, from July 2, 2021 (the day after mediation) through July 13, 2021 (when the Court entered Final Judgment), Acorn failed to put forth any evidence of the amount of pre-judgment interest it sought. The Court finds no authority that it must query the parties as to a proper interest rate for pre-judgment interest before entering its judgment. Acorn's argument that it was somehow prevented from making its position known to the Court prior to entry of judgment rings hollow. The Court therefore finds that Acorn's requests for a specific pre-judgment interest rates are improper for Rule 59(e) and should have been raised before the Court entered Final Judgment. *Templet*, 367 F.3d at 479. For these reasons, Acorn's Motion to Amend is **DENIED**.

      **B.**    **Samsung's JMOL Motion**

Samsung's JMOL Motion argues that the asserted patents claim an interface layer with both a metal oxide layer and a distinct semiconductor oxide layer. Samsung argues that because the accused products do not have two distinct layers of oxide, its JMOL Motion should be granted. For the reasons set forth below, the Court disagrees.

Samsung argues that its design specifications and manufacturing process show that metal silicide, not metal oxide, is used in the interface layer of the accused product. (Dkt. No. 387 at 8,

9). Samsung walks through its manufacturing process and testimony about its technical process to argue that "Samsung's lack of any process step for creating a metal oxide layer further demonstrates that there is not a metal oxide layer at the interface." (*Id.* at 9–11). Samsung also argues that the elemental analysis performed by its expert, Dr. Jeffrey Bokor, demonstrates that the accused products lack a layer of metal oxide. (*Id.* at 12). Samsung argues that unlike Acorn's expert, Dr. Edwin Piner, Dr. Bokor properly performed his elemental analysis. (*Id.*). Samsung argues that Dr. Piner's methodology exposed the test devices to oxygen and caused the formation of oxides that would not have been present in the accused products as manufactured. (*Id.* at 12, 15–19). Samsung traverses Dr. Bokor's methodology and analysis to argue that it conclusively shows that the accused Samsung products do not have enough oxygen to form a layer of metal oxide. (*Id.* at 13–14) (citing DTX241-19; DTX242-19; DDX-160-175, 206; DDX-183-184, 207; DTX241-19; DTX242-19; Dkt. No. 352 at 890:9–25, 892:13–893:2, 895:16–24). Samsung next traverses numerous trial exhibits and demonstratives to argue how those documents cannot support a finding that a metal oxide layer exists in the accused products. (*Id.* at 15–25) (citing Dkt. No. 388-8; PTX-404; PTX-650; PTX-702; PTX-874; PTX-202; PTX-737). With respect to the semiconductive oxide layer, Samsung again critiques Dr. Piner's conclusions and the evidence he relied on in coming to those conclusions. (*Id.* at 27–30). Samsung argues that the defects it has identified with Acorn's evidence means that it cannot qualify as substantial evidence. (*Id.* at 26).

Acorn responds with a detailed explanation of the evidence that it contends shows that accused products contain two oxide layers within the interface. (*See generally* Dkt. No. 394). Acorn first points to Dr. Piner's testimony describing and explaining his tear-downs of the accused Samsung products. (Dkt. No. 394 at 2) (citing Dkt. No. 348 at 433:9–15, 436:24–439:6; Dkt. No. 394-3 at 27–30). Acorn argues that Dr. Piner "explained and showed the chemical imaging

6

analysis he performed to determine the materials present in and around the accused interface layer." (*Id.* at 3) (citing Dkt. No. 348 at 438:18–445:25; Dkt. No. 394-3 at 33, 36–41). Acorn contends that Dr. Piner explained his "line scans in great detail, including in particular how the oxygen signal in those line scans demonstrates peaks right in the region that Dr. Piner had identified as a layer of silicon oxide and a layer of titanium silicon oxide." (*Id.* at 4–5) (citing Dkt. No. 348 at 450:18–451:12, 451:22–452:3, 465:16–468:14, 475:5–477:12; Dkt. No. 394-3 at 67, 74, 102–03). Acorn also responds that Dr. Piner "analyzed and explained for the jury Samsung documents and testimony that supported his opinion as to the layers of metal oxide and silicon oxide." (*Id.* at 6). Like Samsung, Acorn addresses these documents in detail and explains how it believes they support Acorn's position and disproves Samsung's conclusion. (*Id.* at 6–14, 24–29) (citing PTX-702; PTX-744-1; PTX-404; PTX-202; PTX-650; PTX-510; PTX-874; PTX-1285; PTX-733). In response to Samsung's argument that its manufacturing process does not intentionally place layers of oxide in the interface layer, Acorn argues that such does not undermine Dr. Piner's evidence about the results. (*Id.* at 14). Acorn points to testimony by numerous witnesses and Samsung documents that Acorn says establishes that oxide is present in the interface layer. (*Id.* at 14–16) (citing Dkt. No. 345 at 227:11–233:4; Dkt. No. 346 at 223:9–13; Dkt. No. 348 at 460:20–463:5; Dkt. No. 356 at 810:1–813:7, 814:15–18, 816:24–820:6, 823:24–825:21, 827:19–828:24; Dkt. No. 359 at 931:9–25; Dkt. No. 360 at 953:8–13, 955:22–957:25; Dkt. No. 362 at 1025:23–1026:10, 1033:6–9, 1034:18–1035:10; 1037:1–8; PTX-201). Acorn responds to Samsung's attacks on Dr. Piner's testing methodology by pointing out the flaws in Dr. Bokor's analysis and argues that this is simply a "credibility dispute" between the experts that the jury properly resolved. (*Id.* at 16).

The Court agrees with Acorn. Samsung's JMOL Motion essentially asks the Court to weigh the competing expert analyses and evidence in Samsung's favor and overturn the jury's verdict. The Court is neither inclined nor permitted to do so. *Packet Intelligence LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1311 (Fed. Cir. 2020). Acorn has identified substantial evidence that supports the jury's verdict. In particular, Acorn points to Dr. Piner's testimony regarding his tear-downs of the accused Samsung products. (Dkt. No. 394 at 2) (citing Dkt. No. 348 at 433:9–15, 436:24–439:6). At trial, Dr. Piner testified about his findings of these tear-downs and subsequent analysis of the accused products. (*Id.*). Dr. Piner testified that his testing revealed a layer of silicon oxide and a layer of titanium silicon oxide in the interface layer. (*Id.* at 4–5) (citing Dkt. No. 348 at 450:18–451:12, 451:22–452:3, 465:16–468:14, 475:5–477:12). Acorn also put forth evidence at trial showing how Samsung's documents and witnesses support Dr. Piner's conclusion and Acorn's infringement theory. (*Id.* at 6–14) (citing PTX-702; PTX-744-1; PTX-404; PTX-202; PTX-650; PTX-510; PTX-874; PTX-1285; PTX-733). It is abundantly clear that, at the JMOL stage, the Court is to view all evidence in the light most favorable to the non-movant (Acorn). *Core Wireless*, 880 F.3d at 1361. Under that standard, the Court concludes that the jury's verdict is supported by substantial evidence and must stand.

Equally unpersuasive is Samsung's repeated contention that it cannot infringe because its manufacturing process does not include a step for creating a metal oxide layer. Notwithstanding the fact that all the asserted claims are apparatus claims (rather than method claims), the jury heard these arguments and was free to consider such evidence and find it unpersuasive in light of the competing evidence.

Further, Samsung critiques Dr. Piner's analysis arguing that he "inflated the oxygen counts by as much as a ***factor of fifteen***, giving the false and misleading appearance that the samples had

high oxygen concentrations." (Dkt. No. 387 at 16).  Such a criticism does not amount to a complaint about a lack of evidence—as is required on a JMOL motion.  Rather, Samsung's criticism is that the jury did not agree with Samsung's view on the credibility of Dr. Piner's testimony.[1]  It is the role of the jury, not the Court, to hear all the evidence—including vigorous cross examination and competing expert testimony, both of which Samsung presented in this case—and decide issues of credibility and fact.  *See Gomez*, 442 F.3d at 937–38.  Here, as part of the jury's finding of infringement, it necessarily found that the accused Samsung products have two oxide layers in the interface layer.  This result was appropriately well within the jury's province to resolve and the Court is not to disturb that finding unless "the evidence points so overwhelmingly in favor of one party that reasonable jurors could not arrive at any contrary conclusion." *Core Wireless*, 880 F.3d at 1361.  Such is not the case here.  As discussed above, the Court has reviewed the evidence cited and described by both parties in their briefing and concludes that the jury's verdict is supported by substantial evidence; as such, the JMOL Motion must fail.

### III.   CONCLUSION

For the reasons set forth above, the Court finds that Acorn's Motion to Amend seeks relief outside the bounds of Rule 59(e) and is therefore **DENIED**.  Further, the Court finds that the jury's verdict is supported by substantial evidence, and accordingly, Samsung's JMOL Motion is **DENIED**.

---

[1] Samsung's arguments on this score also appear to be attacks on Dr. Piner's methodology.  This Court has recognized that attacks on an expert's methodology are inappropriate at the JMOL phase. *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, Case No. 2:13-cv-0213, 2016 WL 362540, at *4 (E.D. Tex. Jan. 29, 2016).

**So ORDERED and SIGNED this 25th day of January, 2022.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE