IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ACORN SEMI, LLC, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION NO. 2:19-CV-00347-JRG |
| § | |
| SAMSUNG ELECTRONICS CO., LTD., § | |
| SAMSUNG ELECTRONICS AMERICA, § | |
| INC., SAMSUNG SEMICONDUCTOR, § | |
| INC., SAMSUNG AUSTIN § | |
| SEMICONDUCTOR, LLC, § | |
| § | |
| *Defendants*. § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Acorn Semi LLC's ("Acorn") Motion for Exceptional Case Finding and Award of Attorney Fees (the "Motion") (Dkt. No. 383). Having considered the Motion and the subsequent briefing, and for the reasons set forth herein, the Motion is **DENIED**.

**I.    BACKGROUND**

On October 23, 2019, Acorn filed the above-captioned case against Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor, LLC's (collectively, "Samsung"). (Dkt. No. 1). Acorn alleged Samsung infringed six United States patents: U.S. Patent No. 7,084,423 (the "'423 Patent"), U.S. Patent No. 8,766,336 (the "'336 Patent"), U.S. Patent No. 9,209,261 (the "'261 Patent"), U.S. Patent No. 9,461,167 (the "'167 Patent"), U.S. Patent No. 9,905,691 (the "'691 Patent"), and U.S. Patent No. 10,090,395 (the "'395 Patent"). (*Id.* ¶¶ 9–14, 58–117). As is typical in hard-fought high-stakes civil litigation, the Court resolved numerous discovery and pre-trial disputes between the parties. (*E.g.*, Dkt. Nos. 134, 228, 230, 320). The Court found it necessary to issue targeted sanctions and stern directives on certain occasions in an effort to encourage the parties to shift their

discovery tactics and work more cooperatively. (*E.g.*, Dkt. Nos. 53, 278, 338).  If this were a simple case of limited reach, such might be out of the ordinary.  It is not out of the ordinary in a complex case of substantial impact, such as the present matter.  On May 13, 2021, the Court commenced a jury trial in this case, and on May 19, 2021 the jury returned a verdict finding Samsung infringed all asserted claims of the narrowed but remaining asserted patents (Claim 13 of the '336 Patent, Claims 1 and 6 of the '167 Patent, Claims 6, 8, and 19 of the '691 Patent, and Claims 17 and 20 of the '395 Patent).  (Dkt. No. 367 at 4).  The jury awarded Acorn $25 million in the form of a lump sum royalty for Samsung's infringement.  (*Id.* at 6–7).

## II.   LEGAL STANDARD

In "exceptional cases," a district court "may award reasonable attorney fees to the prevailing party" pursuant to 35 U.S.C. § 285.  An "exceptional case" is "simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014); *see also Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014) (noting that "the word 'exceptional' in § 285 should be interpreted in accordance with its ordinary meaning" (citing *Octane Fitness*, 134 S. Ct. at 1755)).  Notably, it is not necessary that the litigation conduct at issue be independently sanctionable, e.g., because it involves bad faith or some other misconduct.  *See id.* at 1756–57 (holding that "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees").

The Supreme Court has been clear that district courts must determine whether any particular case is "exceptional" in a "case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756.  Whether a case is "exceptional"

or not "is a factual determination," *Forcillo v. Lemond Fitness, Inc.*, 168 F. App'x 429, 430 (Fed. Cir. 2006), and the court must make its discretionary determination by a "preponderance of the evidence." *Octane Fitness*, 134 S. Ct. at 1758 (rejecting the prior requirement that a patent litigant establish its entitlement to fees under § 285 by "clear and convincing" evidence). A district court's determination of whether a case is "exceptional" under § 285 is reviewed for an abuse of discretion. *See Highmark Inc.*, 134 S. Ct. at 1748; *see also Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1374 (Fed. Cir. 2017) ("On appeal, all aspects of a district court's § 285 determination are reviewed for an abuse of discretion." (citation omitted)).

In assessing the "totality of the circumstances," courts may consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 134 S. Ct. at 1756 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.9 (1994) (addressing a similar fee-shifting provision in the Copyright Act)). Although a party's conduct need not be independently sanctionable to warrant an award of fees under § 285, *Id.* at 1756–57, fee awards should not be used "as a penalty for failure to win a patent infringement suit." *See id.* at 1753 (quotation omitted); *see also Checkpoint Sys., Inc.*, 858 F.3d at 1376.

Although an exceptional case finding is no longer constrained to "inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement," *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002), "the absence of such conduct also weighs against an award" of fees under § 285. *AstraZeneca AB v. Aurobindo Pharma Ltd.*, 232 F. Supp. 3d 636, 649 (D. Del. 2017).

### III.  DISCUSSION

In its Motion, Acorn identifies five categories of conduct it contends supports its claim for fees: (1) Samsung's alleged failure to identify e-mail custodians; (2) Samsung's non-e-mail

document production; (3) Samsung's e-mail production; (4) Samsung's alleged failures regarding 30(b)(6) depositions; and (5) Samsung's alleged abuse of COVID-19 protocols during deposition and trial.

### A.     E-Mail Custodians

Acorn argues that Samsung failed to comply with the Court's E-Discovery Order when it only identified two e-mail custodians instead of fifteen as required by the Order. (Dkt. No. 383 at 4) (citing Dkt. No. 43 at 3; Dkt. No. 38 ¶ 6, n.2). Acorn argues that nearly a month later, Samsung identified three more custodians (for a total of five). (Dkt. No. 383 at 4). Acorn then contends it was forced to file a motion to compel on the issue. (*Id.*). Acorn contends that after it filed the motion to compel, Samsung identified all fifteen custodians. (*Id.*).

Samsung responds that Acorn's motion to compel on this issue was premature. (Dkt. No. 390 at 6). Samsung argues that Acorn also failed to disclose all fifteen custodians on the exchange deadline—instead only providing nine total custodians. (*Id.* at 5). Samsung argues that it agreed to amend its disclosures and name additional custodians, but Acorn nevertheless proceeded to file a motion to compel on the issue. (*Id.* at 5–6).

Both parties cite to a prior order of the Court on this issue. (Dkt. No. 383 at 4; Dkt. No. 390 at 6) (citing Dkt. No. 53). In said Order, the Court denied the motion to compel on the issue as moot and also denied Acorn's request for fees on the issue. The Court noted that it had "carefully considered the Parties' briefing and does not find that the alleged conduct rises to a level necessitating the imposition of attorneys' fees as a sanction at this point in this case." (Dkt. No. 53 at 2). The Court also observed that "this conduct may be considered if and when an appropriate future motion pursuant to 35 U.S.C. § 285 might be decided." (*Id.* at 2 n.2). Acorn's briefing implies it believed that this footnote was a signal by the Court that Acorn was entitled to fees due

to Samsung's conduct on this issue. Acorn reads too much into the Court's footnote.[1] The Court simply promised that it would consider the complained of conduct in assessing a motion for fees under § 285, which the Supreme Court requires be done by evaluating the "totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756.

In further considering said conduct, the Court is not persuaded that this issue shows that Samsung litigated this case in a substantially unreasonable manner. Instead, this issue—along with the others discussed herein—demonstrates a pattern that the Court observed throughout this case: that neither party is without blame as to the issues raised before the Court. Both sides made a clear strategic decision: Acorn was going to demand overbroad discovery—even if it was not interested in providing overbroad discovery itself—and rush to file motions to compel in an effort to achieve that overbroad discovery while Defendants would wholly resist discovery until a motion to compel was filed at which point they would attempt to secure a compromise. The Court does not condone this practice, and in fact discouraged it in this case. (*E.g.*, Dkt. Nos. 53, 278, 338). However, the Court declines to find Samsung's conduct was unreasonable in light of Acorn's conduct. Specifically, Acorn's complaint on this issue is that Samsung refused to identify fifteen e-mail custodians at the deadline, yet Acorn is silent on the fact that it too did not identify the required number of e-mail custodians.[2] (*See generally* Dkt. No. 392).

---

[1] A better takeaway from the cited footnote would be that although the Court did not find the conduct sanctionable, the Court disfavors resisting discovery as a defense strategy. The Court expected that the parties would begin a more collaborative approach to discovery instead of burdening the Court with additional discovery disputes and avoidable motion practice. Regrettably, that message was missed by both sides.

[2] Acorn argues in its reply that its "litigation behavior is irrelevant." (Dkt. No. 392 at 4). Acorn cites no authority for such a proposition, and the Court finds it is counter to the Supreme Court's instructions that it consider the "totality of the circumstances" in determining if a case is exceptional. *Octane Fitness*, 134 S. Ct. at 1756.

### B.     Samsung's Non-E-Mail Document Production

Acorn next complains about Samsung's non-e-mail document production. Specifically, Acorn argues that Samsung did not comply with its discovery obligations for license and settlement agreements, damages documentation, and other non-email documents.

**License and Settlement Agreements**: On this issue, Acorn points to Paragraph 3 of the Discovery Order, which required Samsung to produce, by April 13, 2020, "all documents . . . that are relevant to the pleaded claims or defenses involved in this action" along with "materials bearing on the nature and extent of injuries suffered." (Dkt. No. 383 at 5). Acorn contends that Samsung did not produce any license or settlement agreements until November 2020—after its motion to compel on this issue was fully briefed and weeks before the close of fact discovery. (*Id.* at 7). Acorn argues that its interactions with Samsung's counsel and the delay in producing the information demonstrates that the case is exceptional. (*Id.* at 5–9). In support of its contention that Samsung's counsel misrepresented that the search for license and settlement agreements was ongoing during summer and fall of 2020, Acorn points to the 30(b)(6) testimony of Mr. Joon-Il Lee. (*Id.* at 8). Acorn argues that Mr. Lee testified that he was not instructed to begin looking for license and settlement agreements until "a couple of weeks" before November 10, 2020. (*Id.*). Acorn notes that this was after it had filed a motion to compel on the issue. (*Id.*).

Samsung responds that Acorn's own expert acknowledged that the license and settlement agreements Samsung produced were irrelevant. (Dkt. No. 390 at 6). Samsung does not appear to dispute the timeline Acorn recounts—but argues that it is missing significant context. (*Id.* at 7). In particular, Samsung argues that it had promised to produce license and settlement agreements after Acorn raised the issue, even though it believed the documents were irrelevant to this case. (*Id.*). Samsung points out that Acorn's expert did not find any of the agreements Samsung eventually produced relevant to his analysis, and Acorn's entire damages case was based on four

6

publicly available third-party agreements. (*Id.*). Samsung also notes that Acorn did not produce these publicly available agreements until after the close of fact discovery. (*Id.*). Samsung concludes that not producing license and settlement agreements it viewed as irrelevant—which Acorn eventually agreed was true—cannot support a finding that Samsung's litigation conduct was unreasonable. (*Id.* at 8–9).

The Court is not persuaded that conduct relating to information ultimately found to be irrelevant shows that Acorn is entitled to fees. Here, the paragraph in the Discovery Order that Acorn relies upon as its basis that Samsung should have produced the license and settlement agreements sooner specifically refers to ***relevant*** information and documents. The timeline detailed by Acorn shows that it pursued several letter writing campaigns and motion practice for information that it admittedly found to be irrelevant once Samsung produced it.[3] The Court finds that both Acorn and Samsung had ample opportunities to deescalate the dispute over this information and both decided not to—instead opting to stick with their mutually uncooperative discovery strategy. In light of this, the Court declines to find the license and settlement agreements issue supports finding the case exceptional.[4]

**Damages Documents and Other Non-E-Mail Documents**: Acorn largely references its arguments with respect to the license and settlement agreements for these categories of alleged misconduct. (Dkt. No. 383 at 9–10). Acorn notes that Samsung did not agree to produce any

---

[3] Acorn's reply attempts to shift blame to Samsung for its overbroad discovery demands. (Dkt. No. 392 at 2) ("*First*, Samsung complains that Acorn's discovery requests were overbroad. If so, the proper course is to object, meet and confer, compromise, and involve the Court when necessary, *before* the close of discovery."). This further shows that both parties were to blame for the numerous disputes in this case. Acorn should have tailored its discovery demands to the issues of the case rather than pursue overbroad discovery and wait for Samsung to object in order to narrow.

[4] To be clear, this is not to say that parties should be faulted for pursuing discovery deficiencies they believe, in good faith, to be relevant even though their expert ultimately concludes that such information is not applicable to the facts of the case. The Court simply concludes that in light of the totality of the circumstances of this case, including the conclusions rendered by Acorn's expert on the sought-after discovery, Samsung's conduct on the whole does not support an award of fees to Acorn.

documents with respect to these issues. (*Id.*). Samsung responds that "Acorn again asked for the 'kitchen sink' in its overbroad technical motions." (Dkt. No. 390 at 9). Samsung argues that the parties engaged in a meet and confer after Acorn filed a motion to compel on these issues and agreed to a narrower scope than demanded by Acorn as a compromise. (*Id.* at 9). Samsung argues this is far from exceptional. (*Id.*).

Again, the Court is not persuaded that this conduct rises to the level of unreasonable litigation behavior by Samsung because both parties contributed to the need for motion practice. Here, Acorn demanded a broad scope of topics that it ultimately agreed to narrow after its motion to compel. Although this is a common practice, it is avoidable.[5]

### C.  Samsung's E-Mail Production

Acorn argues that Samsung promised to complete e-mail production by November 3, 2020 (with rolling productions beforehand), but Samsung's first production did not come until November 2, 2020. (Dkt. No. 383 at 11). Acorn argues that a second production did not come until November 12, 2020—less than a week before the close of fact discovery. (*Id.*). Acorn notes that Samsung's first and second e-mail productions only contained 2,873 and 3,716 e-mails, respectively. (*Id.*). Acorn argues that after the close of fact discovery and after the deadline for Acorn's opening infringement expert report, Samsung produced 241,768 additional e-mails, totaling 1.6 million pages. (*Id.*). Acorn argues that this delay was prejudicial because it was forced to conduct depositions without these documents and it needed to review 1.6 million pages of documents while dispositive motions and *Daubert* motions were briefed. (*Id.* at 12).

---

[5] The Court did note, however, that the number of collective discovery disputes between the parties was "exceptional." (Dkt. No. 230 at 4:14–22). The Court finds that this was due to an unwillingness of counsel work cooperatively during discovery and blame falls on both parties.

Samsung responds that e-mail production requests were to be "served no later than two months before the fact discovery deadline." (Dkt. No. 390 at 9) (citing Dkt. No. 38 ¶ 6). However, Samsung argues, Acorn made its first e-mail production request the night before the deadline. (*Id.*). Samsung also argues that the e-mail production request was defective "because [Acorn] listed double of the eight-custodian limit." (*Id.*). Samsung argues that because of this deficiency it could not begin the collection and review process until Acorn served compliant requests, which did not occur until October 5, 2020. (*Id.*). Samsung also notes that "Acorn's initial search terms resulted in hits on over half a million documents, yet Acorn refused to narrow its search terms until November 10, 2020 (six days before fact discovery close[d])." (*Id.*). Samsung points out that the revised list still resulted in 250,000 documents. (*Id.*).

The Court again concludes that the litigation conduct complained of herein is attributable to both parties. Both parties are represented by experienced counsel who understand the efforts required to collect, search, and review e-mails. The Court's discovery orders are designed to facilitate cooperation between counsel so that the significant efforts required to complete discovery can be conducted in an efficient and timely manner. When parties refuse to follow those procedures the case schedule becomes unnecessarily condensed. It is clear from the parties' briefing that neither Acorn nor Samsung approached the deadlines and procedures in the Court's discovery orders with the requisite seriousness, and such resulted in the busy *Daubert* and dispositive motions briefing period Acorn now complains of in its Motion. The Court declines to penalize Samsung's conduct in light of both parties' disregard for the deadlines set forth in the Court's discovery directives.

    **D.**     **30(b)(6) Depositions**

Acorn argues that Samsung refused to designate a witness to testify on thirty-three noticed 30(b)(6) topics despite failing to object to those topics. (Dkt. No. 383 at 12). Acorn also argues

that Samsung refused to prepare its 30(b)(6) witnesses and simply designated multiple witnesses for each noticed topic:

- Po-Chin Kuo:     7, 8, 9, 10, 14, 22, 23, 24, 25, 26, 27, 30, 31, 32, 33, 34, 35
- Sehong Kim:      7, 8, 9, 10, 14, 22, 23, 24, 25, 26, 27, 30, 31, 88, 89, 90, 91.
- Kin-Sang Lam:    7, 8, 9, 10, 14, 22, 23, 24, 25, 26, 27, 30, 31, 32, 33, 34, 35.
- David Moreau:    7, 8, 9, 10, 14, 22, 23, 24, 25, 26, 27, 30, 31, 32, 33, 34, 35, 36, 38, 39, 68, 70, 71, 88, 89, 90, 91.

(*Id.* at 13). Acorn argues that "[t]his practice made it nearly impossible for Acorn to depose each designated witness meaningfully on each of the designated topics in the time allotted. This is especially so because, a significant amount of time, the witness would not, in fact, know anything about the designated topic." (*Id.* at 14). Acorn notes that "Samsung received a sanction related to this behavior" when the Court struck Samsung's expert report that relied on conversations with David Moreau on non-infringing alternatives when Mr. Moreau refused to give testimony on that topic. (*Id.*).

Samsung responds that the thirty-three additional topics were "unreasonable for many reasons," including because the topics "(1) did not cover the information Acorn claimed; (2) overlapped with other redundant topics on which Samsung already had designated witnesses; (3) were directed to expert discovery; and (4) sought irrelevant information." (Dkt. No. 390 at 10–11). Samsung notes that after Acorn filed its motion to compel, Acorn agreed to narrow the disputed 30(b)(6) topics from thirty-three to fifteen. (*Id.* at 11). Samsung also notes that Acorn never moved to compel additional 30(b)(6) depositions on the basis that a witness was unprepared. (*Id.*). Samsung argues that its witness designation strategy was reasonable in view of Acorn's overly broad topics. As an example, Samsung identifies Topic No. 7:

> The process flow(s), and individual steps therein, by which Samsung manufactures devices according to Samsung's 14nm FinFET process technology, including all process recipes and steps within each recipe, including but not limited to, all steps

10

      between formation of the Samsung Accused Devices' epitaxial source/drain regions and the level 1 metal (first copper lines).

(*Id.* at 11–12) (citing Dkt. No. 390-7 at 6). Samsung argues that "[t]his unbounded topic asks for the *entirety* of Samsung's 14nm FinFET process flows (which cover thousands of steps), including all the minute details about the process flows' collection of recipes. No single witness could be expected to cover such a broad topic." (*Id.* at 12). Samsung argues that "the Court already provided Acorn a sufficient remedy by prohibiting Samsung from offering trial testimony relating to non-infringing alternatives." (*Id.*).

      As with most of Acorn's complaints, it is clear that Samsung could (and should) have done a better job designating witnesses for certain topics to provide Acorn with more sufficient notice. The Court does not condone Samsung's conduct. Nonetheless, the Court has reviewed the 30(b)(6) topics and finds that many were overly broad.[6] Although the parties' conduct is not a model of how to practice before any United States District Court, this Court declines to find that Acorn is entitled to its fees.

### E.     Alleged Abuse of COVID-19 Protocols

      Acorn's final argument relates to alleged abuses of COVID-19 protocols during depositions and at trial. (Dkt. No. 383 at 14–15). The Court is not persuaded that Samsung acted unreasonably on this issue as to warrant an award of fees. COVID-19 forced the Court and the parties to temporarily shift to new virtual means to perform traditionally in-person tasks. During such a rapid change, mistakes and misunderstandings were inevitable. The Court does not find such adjustments (as the parties' conduct related thereto) weigh in favor of awarding fees.

---

[6] Samsung does not counter Acorn's argument that Samsung never objected to the thirty-three disputed topics (other than refusing to provide a witness). (*See generally* Dkt. No. 390 at 12). Samsung also notes that Acorn behaved similarly in simply refusing to designate a witness for certain topics. (*Id.* at 11). The Court expects litigants to timely serve objections on noticed topics and move to compel a deposition if needed.

## IV. CONCLUSION

Every law student is taught the ancient maxim "he who comes to equity must come with clean hands." Acorn's lack of clean hands not only causes its arguments to ring hollow, it also compels the Court to cast a somewhat jaundiced eye upon their request, despite their showing that Samsung's hands are likewise far from clean. For the reasons set forth above, Acorn's Motion is **DENIED**.

**So ORDERED and SIGNED this 17th day of February, 2022.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE